_____

)
STACEY MUSGRAVE, TRACY SAYRE-YEH )
and JAMES MACKAY, )
)
      Plaintiffs, )
)
      v. )      **Civil Action No. 11-11276-DJC**
)
COMMONWEALTH OF MASSACHUSETTS )
DEPARTMENT OF PUBLIC HEALTH, JOHN )
AUERBACH, ABDULLAH REHAYEM, )
RENEE LAKE and BRENDAN MURPHY, )
)
      Defendants. )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                     June 1, 2012

## I.    Introduction

Plaintiffs Stacey Musgrave ("Musgrave"), Tracy Sayre-Yeh ("Sayre-Yeh") and James

Mackay ("Mackay") (collectively, "the Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983

against Defendants Massachusetts Department of Public Health ("DPH"), John Auerbach, Abdullah

Rehayem, Renee Lake and Brendan Murphy (collectively, "the Defendants") for violation of their

due process rights under the Fourteenth Amendment in connection with the suspension of their

Emergency Medical Technician ("EMT") certifications.  The Defendants have now moved to

dismiss the complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6).  For the reasons set

forth below, the Defendants' motion to dismiss is GRANTED.

## II.     Standard of Review

To survive a motion to dismiss, a complaint "must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to relief.'" Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007)).   To determine whether the factual allegations in the complaint are sufficient to survive a motion to dismiss, the Court "employ[s] a two-pronged approach." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (applying Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009) and Twombly, 550 U.S. at 555).   First, a court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  A court must then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Id.  If they do, "the claim has facial plausibility" and can survive a motion to dismiss. Ocasio-Hernández, 640 F.3d at 12.

## III.    Factual Allegations

In the spring of 2010, DPH received information that Mark Culleton, a widely used CPR and Advanced Cardiac Life Support ("ACLS") trainer, had falsified training records and issued certification cards for trainings that were never held.  Compl. at ¶ 14.  A large-scale investigation was launched and many EMTs whose certification cards were issued by Culleton became targets of DPH's investigation.  Id.

### A.     The Cover Letter Signed by Defendant Rehayem

On June 16, 2010, Defendant Rehayem, the Director of the Office of Emergency Medical

Services ("OEMS"), sent essentially identical letters to each plaintiff.  Id. at ¶ 39, Exs. 1-3 (June 16, 2010 letters).  Rehayem's letter enclosed a document, signed by DPH Commissioner Defendant Auerbach, entitled "Notice of Agency Action:  Immediate Suspension and Proposed Temporary Revocation of Certification as an Emergency Medical Technician" ("the Notice").  Id. at ¶ 39, Exs. 1-3 (Notice).  The Notice referenced and attached a report entitled "Complaint Investigation Report #10-0414."  Id. at ¶ 42, Exs. 1-3.

Rehayem's letter informed the Plaintiffs that for the reasons set forth in the Notice, their EMT certifications would be suspended effective July 1, 2010.  Compl., Exs. 1-3 (June 16, 2010 letters).  Rehayem's letter further informed each of the Plaintiffs that the action was subject to the adjudicatory provisions of Mass. Gen. L. c. 30A and would be governed by the Standard Adjudicatory Rules of Practice and Procedure, 801 C.M.R. § 1.01 *et seq.*  Id.  The letter stated that pursuant to 105 C.M.R. §§ 170.750 and 170.760, the Plaintiffs could request an adjudicatory hearing by filing a request for a hearing within 14 days of receipt of the Notice.  Id.

### B.        The Complaint Investigation Report #10-0414

The Complaint Investigation Report #10-0414 ("Report"), based on an investigation conducted by Defendants Lake and Murphy, explained that DPH received an anonymous complaint that an EMT-Paramedic had received an ACLS card without attending a training class.  Exs. 1- 3 (Report at 2 attached to Notice).  DPH contacted the EMT's employer, which told DPH that the training center listed on the ACLS card was the Clinical Training Center of Boston Medical Center and the instructor's name on the card was Mark Culleton.  Id.  DPH contacted the Clinical Training Center and requested the educational roster for this particular ACLS class, as well as all the rosters for the previous two years for Culleton's classes.  Id.  DPH identified a February 21, 2010 class held

at the Burlington Police Department for two EMT-Basics and three EMT-Paramedics for CPR and ACLS training.  Id.  Culleton admitted that he made up the test scores that appeared on the course roster in question and that the listed attendees did not attend any class on that date with him.  Id. at 3.  Culleton stated that he often provided cards for ACLS or CPR without an actual training course for EMT colleagues who needed a card and that he had done this often over the last two years.  Id. Culleton provided a list of names of people to whom he could recall providing ACLS and CPR cards.  Id. at 4.  DPH also reviewed all of Culleton's ACLS and CPR course rosters provided by the Clinical Training Center.  Id.  DPH identified 67 individuals whose names appeared on either a CPR or ACLS roster submitted by Culleton through the Clinical Training Center and found that none of the individuals had attended a course at all.  Id.  Of those, DPH confirmed that 43 EMTs had accepted an ACLS or CPR card based on one of the fictitious classes and had used these cards to document current qualifications to work as EMTs with their ambulance services.  Id. at 4-5. Attachment A to the Report listed these 43 EMTs by name, including the Plaintiffs.  Def. Mem., Ex. 1 (Attachment A to Report).

**C.    The Notice**

Based on the investigative findings that the Plaintiffs fraudulently represented receiving training on current standards of care governing CPR and ACLS, Defendant Commissioner Auerbach suspended the Plaintiffs' EMT certifications effective July 1, 2010.  Compl. at ¶¶ 19, 23, 38, 41; Exs. 1-3 (Notice at 1).  Defendant Auerbach found that each of the Plaintiffs' continued certification endangered the health and safety of the public.  Compl., Exs. 1-3 (Notice at 1).  DPH also proposed revoking each plaintiff's certification pending compliance with certain conditions noted in the action.  Id.  The Notice included several findings, including that each of the Plaintiffs had submitted

a purported current training card to his/her employer which reflected successful completion of a CPR/ACLS course conducted by Culleton, id. at ¶ 5; that Culleton never conducted the training, and the card, therefore, was invalid, id. at ¶ 6; that each of the Plaintiffs admitted to DPH investigators that he/she did not attend the training, and received the card based on fictitious rosters submitted by Culleton, id. at ¶ 7; that each of the Plaintiffs' disregard of minimum eligibility training standards for EMTs endangers patient health and safety and violated his/her duty to uphold the public's trust, id. at ¶ 8; and that "immediate suspension of [each plaintiff's] EMT certification is necessary to prevent endangering the public health and safety pending adjudication of the revocation sanction," id. at ¶ 9. The Notice further informed each of the Plaintiffs of his/her right to a prompt adjudicatory hearing on the actions outlined in the Notice by submitting a written hearing request within fourteen days. Id. at 1.

The Plaintiffs contended that a number of the findings in the Notice were inaccurate. Compl. at ¶¶ 45-53. Among the findings the Plaintiffs allege were false was the finding that they admitted to department investigators that they did not attend training with Culleton but received a training card for use as documentation of competency in CPR and ACLS skills. Id. at ¶¶ 45-46, 49. DPH never interviewed Musgrave and Sayre-Yeh. Id. at ¶ 47. Defendant Lake did call Mackay, but only to inform him that he was in trouble for submitting a fake certification card. Id. at ¶ 48. Lake did not interview Mackay and did not offer him the opportunity to respond to the allegations made against him. Id.

### D. The Plaintiffs' Challenges to the Suspension of Their EMT Certifications

The Plaintiffs appealed the suspension of their EMT certifications and requested adjudicatory hearings and Musgrave's and Mackay's cases were docketed with the Division of Administrative

5

Law Appeals ("DALA").  Id. at ¶ 61.  Sayre-Yeh was not suspended because her counsel demonstrated to DPH that her ACLS certification was never issued from Culleton and was valid at all times.  Id. at ¶ 55.  Musgrave's suspension was lifted on November 15, 2010 after her counsel demonstrated to DPH that her ACLS certification issued from Culleton was valid because the ACLS training had in fact occurred in 2008.  Id. at ¶ 56.  Mackay's suspension was lifted on October 22, 2010 after a DALA magistrate ruled in his favor.  Id. at ¶ 57.

As a result of their suspensions (later lifted), Musgrave and Mackay lost income.  Id. at ¶ 58.  All the Plaintiffs hired legal counsel, with associated costs, and were vilified in the local press.  Id.  The Notice was released to the media and the allegations made against the Plaintiffs were published in reports that identified them each by name.  Id. at ¶ 59.

## IV.    Procedural History

On July 22, 2011, the Plaintiffs filed the instant action against the Defendants under 42 U.S.C. § 1983 for violation of their procedural and substantive due process rights with respect to the suspension of their EMT certifications.  The Plaintiffs seek damages, declaratory and injunctive relief.  The Defendants now move to dismiss under Rule 12(b)(6).

## V.    Discussion

### A.    The Plaintiffs' Claims Against DPH and the Individual Defendants Sued In Their Official Capacities For Damages

While "section 1983 provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting 'under color'" of state law, Gomez v. Toledo, 446 U.S. 635, 638 (1980) (quoting 42 U.S.C. § 1983), it is well established that "neither a state agency [such as DPH] nor a state official acting in his official capacity may be sued for damages . . . ." in a section 1983 action.  Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir.

6

1991); see Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that neither a state nor a state official sued in her official capacity is a "person" under section 1983). At oral argument, the Plaintiffs conceded that since monetary damages sought against the Defendants in their official capacities are not available, they are not pursuing damages against the Defendants in their official capacities. March 19, 2012 Hearing Tr. at 10-11. Thus, to the extent the Plaintiffs seek damages in their complaint against DPH, a state agency, and the remaining Defendants (all state officials) in their official capacities, those claims for damages are barred. The Court now turns to the remaining claims against the Defendants in their individual capacities and the claims against the Defendants in their official capacities for declaratory and injunctive relief.

### B.    Whether the Individual Defendants are Entitled To Qualified Immunity

### 1.    General Principles

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It protects all "but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). It "does not shield public officials who, from an objective standpoint, should have known that their conduct was unlawful." Pagán v. Calderón, 448 F.3d 16, 31 (1st Cir. 2006) (citing cases). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," Mitchell v. Fitzgerald, 472 U.S. 511, 526 (1985), a court may evaluate whether a defendant is entitled to qualified immunity on a motion to dismiss. Haley v. City of Boston, 657 F.3d 39, 47 (1st Cir. 2011).

To determine whether the Defendants are entitled to qualified immunity, courts should

undertake a two-part inquiry: "'whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right,'" and if so, "'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" Haley, 657 F.3d at 47 (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009) (further citation omitted)). In Pearson, the Supreme Court explained that engaging in the first inquiry "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." Pearson, 555 U.S. at 236-37. Thus, "[i]f 'it is plain that a constitutional right is not clearly established,' a court may grant the requested immunity without undertaking the 'essentially academic exercise' of ascertaining whether the specific facts depict a constitutional violation." Haley, 657 F.3d at 47 (quoting Pearson, 555 U.S. at 237).

Nevertheless, the Defendants contend that under the first part of the analysis - namely, making out a violation of a constitutional right - the Defendants are entitled to qualified immunity, since the complaint does not allege facts to make out such a claim. The Court, therefore, turns to this inquiry first.

**2.      The Plaintiffs Have Not Sufficiently Alleged a Constitutional Violation**

**a.      Procedural Due Process Claim**

Massachusetts law authorizes DPH Commissioner Defendant Auerbach to suspend a license or certification without a hearing if he finds that public health or safety is endangered. 105 C.M.R. § 170.750(A). The Plaintiffs allege that despite this authority, the finding that public health and safety were in danger was erroneous, that DPH acted in a manner inconsistent with its declaration of an emergency and that the Defendants abridged their procedural due process rights by depriving them of their property interests (i.e., suspending their EMT certifications) without first providing

8

them with a hearing.   Compl. at ¶¶ 63-66.

Because vicarious liability is inapplicable to section 1983 suits, a plaintiff must allege that each defendant, "through the official's own individual actions, has violated the Constitution." <u>Iqbal</u>, 129 S. Ct. at 1948 (noting that "vicarious liability is inapplicable to <u>Biven</u> and § 1983 suits").  That is, to state a procedural due process claim, the Plaintiffs must allege what each named defendant did to cause the constitutional violation.  <u>See id.</u>  Here, the complaint fails to allege that the actions of each Defendant violated the Plaintiffs' procedural due process rights.

"The due process clause is implicated where a party is deprived of a liberty or property interest, as defined by an independent source such as state law, to which he has 'a legitimate claim of entitlement.'" <u>Penobscot Air Servs., Ltd. v. Fed. Aviation Admin.</u>, 164 F.3d 713, 722 (1st Cir. 1999) (quoting <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972)).  It "is 'flexible and calls for such procedural protections as the particular situation demands.'"  <u>Id.</u> at 723 (quoting <u>Mathews v. Eldridge</u>, 424 U.S. 319, 334 (1976) (further citation omitted)).  As such, although "[d]ue process normally requires notice and opportunity for some kind of hearing prior to a final deprivation of liberty or property," <u>Herwins v. City of Revere</u>, 163 F.3d 15, 18 (1st Cir. 1998) (internal quotation marks and citation omitted), a post-deprivation hearing is sufficient to satisfy the requirements of procedural due process where there is "either the necessity of quick action by the State" or when "providing any meaningful predeprivation process" is impractical "when coupled with the availability of some meaningful means to assess" whether the State's action was proper "at some time after the initial taking."  <u>Parratt v. Taylor</u>, 451 U.S. 527, 539 (1981), *overruled on other grounds by* <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31 (1986).

The Supreme Court "has traditionally accorded the states great leeway in adopting summary

procedures to protect public health and safety." Mackey v. Montrym, 443 U.S. 1, 17 (1979). The government's interest in protecting public safety can justify deprivation of property without a hearing where appropriate post-deprivation remedies are available. Id. at 17-18 (affirming against a due process challenge a Massachusetts law mandating summary revocation of driver's licenses for refusing a breathalyzer test with the opportunity for post-revocation hearing). "Where the integrity of state-licensed professions is concerned, suspensions are permissible without extensive pre-termination process, provided that prompt review is available to resolve contested issues." Amsden v. Moran, 904 F.2d 748, 755 (1st Cir. 1990). States have a particularly strong interest in protecting the health of the public and acting to "safeguard the integrity and ethics of the medical profession." González-Droz v. González-Colón, 660 F.3d 1, 14 (1st Cir. 2011) (internal quotation marks and citation omitted) (affirming finding that Puerto Rico's board of medical examiners did not deprive a physician of procedural due process by suspending his medical license without a pre-suspension hearing where physician was provided a prompt post-suspension hearing before the board's final decision to revoke his license).

Here, the Plaintiffs agree that 105 C.M.R. § 170.750(A) provides the commissioner of DPH the authority to suspend an EMT certification without a hearing if he finds that public health or safety is in danger. Compl. at ¶ 64; see also Mass. Gen. L. c. 111C, § 16. Acting under this authority, Auerbach declared a public health and safety emergency. Compl., Exs. 1-3. Even accepting as true the allegations contained in the complaint that such declaration was erroneous and there was in fact no emergency,[1] it cannot be said that the post-deprivation hearing made available

---

[1]The Plaintiffs debate whether the declaration of emergency was an emergency since the Notice, issued on June 16, 2010, stated that the suspension of their EMT certifications was not effective until July 1, 2010, thereby allowing the Plaintiffs to work as EMTs until that date.

to Plaintiffs here failed to comport with procedural due process requirements.  See Herwins, 163 F.3d at 19.

The First Circuit's decision in Herwins governs here.  Herwins held that a state's health inspector's erroneous determination that the plaintiff's building was unfit for human habitation requiring the building be vacated under the state's emergency procedures without a pre-closure hearing did not violate the plaintiff's procedural due process rights because state law offered adequate post-closure remedies.  Herwins, 163 F.3d at 17-18.  Presuming the jury's finding was correct that the health inspector's determination that the building was no longer inhabitable causing it to be vacated was without basis, the Court nonetheless rejected the plaintiff's argument that he should have been afforded a pre-closure hearing.  Id. at 19.  The First Circuit explained that "[w]here an official errs in declaring an emergency, the only feasible procedure is a post-deprivation remedy, which the city also provided."  Id.  The Court noted that the jury's finding showed only that the health inspector's "substantive decision was wrong; he was not required to hold a hearing before declaring an emergency."  Id.  Herwins emphasized that whether an official's mistake is determined to be deliberate or negligent, "there is no denial of procedural due process, even by the official, so long as the state provides an adequate means of redress."  Id.; see also Amsden, 904 F.2d at 753 (stating that "[w]hether the deprivation (e.g., license revocation) was itself erroneous is beside the procedural due process point").  Herwins further noted that the post-deprivation remedy available to the plaintiff is "a conventional regime for addressing administrative error."  Herwins, 163 F.3d at 19 (describing Massachusetts regulations permitting post-deprivation appeal to administrative body followed by appeal to state courts).

---

Compl. at ¶ 66.

Similarly, here, even accepting as true the Plaintiffs' allegation that the declaration of an emergency was erroneous, such error and the resulting suspension did not amount to a violation of procedural due process because an appropriate post-suspension remedy was provided to the Plaintiffs. The Plaintiffs were given notice that pursuant to the applicable regulations, they could appeal their suspensions and request an adjudicatory hearing by filing a request for a hearing within fourteen days of receipt of the Notice. Compl., Exs. 1-3 (June 16, 2010 letter attaching Notice); Pl. Opp. 2-3, D. 11 (noting that DPH notified the Plaintiffs of post-suspension remedies). The complaint acknowledges that the Plaintiffs resolved their issues in the early stages of the administrative process. Compl. at ¶¶ 55-57, 61. That the Plaintiffs all successfully challenged their suspensions further demonstrates that the administrative procedures intended to correct errors were effective and "strongly indicates that the available review mechanisms were constitutionally adequate." Amsden, 904 F.2d at 755; Cf. Barry v. Barchi, 443 U.S. 55, 64-65, 67 (1979) (finding that although the state regulation authorizing summary suspensions without a pre-suspension hearing for horse-racing trainers suspected of drugging their horses did not violate due process, plaintiff's suspension was unconstitutional for the state's failure to assure defendant of a prompt post-suspension hearing).

The Court turns briefly to the procedural due process claims against the other Defendants. With respect to Defendant Rehayem, the complaint alleges only that Rehayem sent the Plaintiffs a cover letter enclosing the Notice, describing the action taken in the Notice and notifying them of their rights to appeal the suspension of their EMT certifications. Sending such letter does not, alone, amount to a procedural due process claim, particularly where the Plaintiffs resolved their cases through the administrative process. As to Defendants Lake and Murphy, the Plaintiffs allege that

their report "did not include any specific allegations or information concerning the Plaintiffs," Compl. at ¶ 42, although the Plaintiffs' names were listed on an attachment to the Report. Accepting as true the complaint's allegations, as discussed above, such allegations are insufficient to state a procedural due process claim where the state provides an adequate means of redress which was provided here.

### b. Substantive Due Process Claim

The complaint further alleges that the Defendants deprived the Plaintiffs of their liberty interests by issuing complaints that contained false accusations and then publicizing them which caused irreparable harm to the Plaintiffs' reputations in violation of substantive due process under the Fourteenth Amendment. Compl. at ¶ 68. The Defendants disagree, arguing that they are entitled to qualified immunity because the Plaintiffs have not shown a violation of their clearly established constitutional rights.

Substantive due process prevents "governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992) (internal quotation marks and citation omitted). To establish a substantive due process claim, plaintiffs must sufficiently allege both "that the acts were so egregious as to shock the conscience" and that such acts deprived them of a "protected interest in life, liberty, or property." Pagán, 448 F.3d at 32. "[C]onscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action." DePoutot v. Raffaelly, 424 F.3d 112, 118 n. 4 (1st Cir. 2005).

Although "no scientifically precise formula" exists to determine whether an official's action

is sufficiently shocking to constitute a substantive due process violation and the analysis in each particular case will vary according to the attendant circumstances, the First Circuit has explained that "conduct must at the very least be extreme and outrageous, or, put another way, truly outrageous, uncivilized, and intolerable" to constitute conscience-shocking behavior.  Pagán, 448 F.3d at 32. (internal quotation marks and citation omitted); see also Dutil v. Murphy, 550 F.3d 154, 160 (1st Cir. 2008) (noting that a "[a] violation of substantive due process is found when the government's conduct is so 'egregiously unacceptable, outrageous, or conscious-shocking' that 'the constitutional line has been crossed'") (quoting Amsden, 904 F.2d at 754) (further citations omitted).  As such, "'mere violations of state law, even violations resulting from bad faith,' do not invariably amount to conscience-shocking behavior."  Pagán, 448 F.3d at 32 (quoting DePoutot, 424 F.3d at 119).

Although the Plaintiffs claim that false statements made about them in the Notice amounted to an abuse of government power, the complaint fails to adequately allege that the Defendants' behavior was truly outrageous or intolerable to constitute conscience-shocking behavior.  While the Plaintiffs claim their reputations were irreparably harmed by disclosure of the Notice to the media, the complaint alleges neither that any individual defendant made this disclosure nor that the disclosure was itself improper.  The complaint also fails to allege that the Defendants had control over the publication through various mediums of the information.  Even if the Defendants were involved in the disclosure to the media, "[d]amage to reputation alone does not constitute a violation of a substantive due process right."  See Watterson v. Page, 987 F.2d 1, 8 n.4 (1st Cir. 1993).   Nor does the Plaintiffs' allegation that they lost money and wages to attend administrative proceedings and to pay an attorney to represent them, standing alone, amount to an unconstitutional deprivation

of property.  Id.

### 3. The Plaintiffs Have Failed to Identify a Clearly Established Constitutional Right

Even if the Court were to find that the Plaintiffs have stated a plausible procedural or substantive due process claim, their claim nonetheless fails since they have failed to show that the Defendants' actions violated a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known," Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks and citation omitted), under the second prong of the qualified immunity analysis. The purpose of qualified immunity is "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Saucier v. Katz, 533 U.S. 194, 206 (2001), *overruled in part on other grounds by* Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in a specific order, and the second step is reached only if the court first finds a constitutional violation).  Assuming, without deciding, that an EMT certification is a property interest that cannot be taken away without due process of law,[2] the determination that a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201.  In other words, "the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "The court must examine whether there are cases of controlling authority . . . at the time of the incident . . . [or] a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful and should search the relevant authorities both in circuit and out of circuit." Barton v. Clancy, 632 F.3d 9, 23 (1st Cir. 2011) (internal quotation marks and citations omitted).

---

[2]The Defendants concede for the purposes of their motion to dismiss that an EMT certification is such property interest.  Def. Mem. at 19.

Here, in light of the binding First Circuit precedent discussed above, an official like Defendant Auerbach would not have been on notice that suspending the Plaintiffs' EMT certifications prior to a hearing violated their due process rights where, as the Plaintiffs allege, he erroneously determined that public health and safety were endangered. Moreover, Defendant Auerbach suspended the Plaintiffs' EMT certifications without a hearing pursuant to his authority under Mass. Gen. L. c. 111C, § 16 (permitting the Commissioner to suspend a certification or license without a hearing) and 105 C.M.R. § 170.750(A) (noting that "the Commissioner may, without a hearing, if the Commissioner finds that public health or safety is endangered, suspend a license, certification" and that persons affected be given the right to an adjudicatory hearing and "promptly afforded an opportunity for a hearing provided that written request for a hearing is submitted within 14 days after notification of suspension"). Public officials, like Defendant Auerbach here, "are far less likely to conclude that their actions violated clearly established rights when they are enforcing a statute on the books with no transparent constitutional problems." Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 104 (2d Cir. 2003); see Guillemard-Ginorio v. Contrera-Gomez, 490 F.3d 31, 40 (1st Cir. 2007) (noting that "state officials are ordinarily entitled to rely on presumptively valid state statutes," unless the statute is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws") (citations omitted). In light of the discussion above, it similarly cannot be said that Defendant Rehayem's drafting of the letter to the Plaintiffs attaching the Notice signed by Defendant Auerbach or Defendants Lake and Murphy's drafting of the Report for DPH violated any clearly established constitutional right of the Plaintiffs.

Accordingly, qualified immunity bars the Plaintiffs' claims against the Defendants in their individual capacities.

### C. Claims Against the Defendants in Their Official Capacities for Declaratory and Injunctive Relief

The Plaintiffs also seek declaratory and injunctive relief against the Defendants in their official capacities, which is not barred by qualified immunity, but in light of the Court's finding that the Plaintiffs have failed to sufficiently allege a constitutional claim, they have no basis upon which to seek declaratory and injunctive relief. See Soto-Padro v. Public Bldgs. Auth., 675 F.3d 1, 8-9 (1st Cir. 2012) (affirming district court's refusal to grant declaratory or injunctive relief and reasoning that once plaintiff's due process claims failed, the plaintiff had "no basis for any relief at all . . . let alone declaratory and injunctive relief"); Redondo-Borges v. U.S. Dep't of Housing and Urban Dev., 421 F.3d 1, 5, 11 (1st Cir. 2005) (affirming district court's rejection of an equitable-relief claim because "plaintiffs had failed to state any claim cognizable under section 1983"); Lopez v. Garriga, 917 F.2d 63, 70 (1st Cir. 1990) (holding that once plaintiff's constitutional claim fails, he is "left without any sound basis for equitable redress"); Rodriguez-Reyes v. Molina-Rodriguez, __ F.Supp.2d ___, 2012 WL 1035727, at *5 (D.P.R. Mar. 29, 2012) (dismissing the plaintiff's constitutional claims against the defendant, in both his individual and official capacity, and, a result, finding that the plaintiff had no basis upon which to seek injunctive relief).

### VI. Conclusion

For the foregoing reasons, the Defendants' motion to dismiss is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge